Opinion issued August 25, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00810-CV

———————————

Charles Thompson, Appellant

V.

Ace American
Insurance Company,
Appellee



 



 

On Appeal from the 61st Judicial District

Harris County, Texas



Trial Court Case No. 08-19436

 



 

MEMORANDUM OPINION

          Appellant,
Charles Thompson, challenges the trial court’s judgment entered, after a jury
trial, in favor of appellee, Ace American Insurance Company (“Ace”), in its
suit for judicial review of a decision of the Texas Department of Workers’
Compensation (“DWC”) in favor of Thompson.[1]  In his first two issues, Thompson contends
that the trial court erred in including a date of injury in its question to the
jury on the issue of whether Ace had proven that Thompson did not sustain a
compensable injury.   In his third issue, Thompson contends, in the
alternative, that if a date of injury was properly included in the question,
the trial court erred in not submitting to the jury a definition of the term “date
of injury” in regard to an occupational disease.  

          We reverse
and remand.  

Procedural History

          After
Thompson, an employee at Brock Maintenance (“Brock”), sought workers’
compensation benefits from Ace for an alleged injury that he sustained at work,
Ace denied his claim.  Subsequently, on
November 7, 2007, a hearing officer at the DWC conducted a contested case hearing
to decide the following issues:

1.     Did [Thompson] sustain a
compensable injury?

 

2.     Does [Thompson] have disability
resulting from the claimed injury, and if so, for what periods?

 

3.     What is the date of injury?

 

The DWC hearing officer issued a
decision, finding that Thompson had “sustained a compensable injury on March
18, 2007” and he “had disability for the period beginning April 3, 2007, and
continuing through the date of this hearing and at no other times.”  The hearing officer’s order contained
findings of fact and conclusions of law, including a finding that Thompson had “sustained
damage or harm to the physical structure of his body while in the course and
scope of his employment on March 18, 2007” and a conclusion that Thompson had “sustained
a compensable injury on March 18, 2007.” 


Ace appealed the hearing officer’s decision
to the DWC Appeals Panel, which upheld the hearing officer’s decision.  The notice of the DWC Appeals Panel’s decision
listed a date of injury of March 19, 2007.[2]  

Ace then filed the instant suit, seeking
review of the DWC Appeals Panel decision in which it found that Thompson had sustained
a compensable injury and he had disability beginning on April 3, 2007.  In its original petition, Ace asserted that
it preserved for appeal all issues presented to the DWC Appeals Panel,
including, but not limited to: 

(1) “Did [Thompson] sustain
a compensable injury? 

 

(2) Did [Thompson] have
resulting [disability] from the claimed injury, and if so, for what
periods?”  

 

Attached to Ace’s petition was the DWC Appeals Panel
notice of its decision in which it stated that the “Hearing Officer’s decision
and Order signed on November 12, 2007 became final” on February 21, 2008.  

Background

At trial, Richard Valdez, a project
manager at Brock, testified that in March or April 2007, while working at the
Valero Refinery in Texas City, Thompson informed him that he had sustained a
“non-occupational” injury.  Valdez
explained that if an employee sustains a non-occupational injury, the employee
needs to see his own doctor, and, if an employee sustains an occupational
injury, the employee would first go to a first aid station at the refinery to determine
whether he needs assistance from an outside clinic or hospital.  Valdez noted that if an employee reports an
injury to him, the employee would immediately go to the first aid station, and Valdez
would not allow the employee to “just leave” and see his own doctor.  Moreover, an employee who sustains an injury,
either on the job or off the job, should report the injury to his supervisor to
file an incident report.  Based on the
“daily activity report” admitted into evidence, Valdez opined that Thompson was
not at work on March 18, 2007.  

David Cummings, a Brock employee, testified
that he saw Thompson on the job site with “open cuts” sometime in March or
April 2007 when Thompson approached him to ask for a “Band-Aid” for some cuts
on his knuckles that he had received while “at home, working on [a] car.”  Cummings noted that, according to the “time
sheets,” Thompson was not at work on March 18, 2007, and he explained that his
previous testimony, in which he stated that Thompson had worked on March 18,
2007, was incorrect because Cummings had made a mistake when he misread the
time sheets.  In his testimony at the
contested case hearing, Cummings was asked, “Do you know if you were working
with [Thompson] on March 19, 2007 or March 18, 2007?”  To which he responded, “I did look back at
the time sheets.  And on March 18, 2007,
he was working scaffolding.  So he was
working under my supervision, along with 40 or 50 other guys.  So, I’m sure he was there.”  

Geoffrey Bottego testified that in
spring 2007, he worked as a Brock safety director at the Valero Refinery.  Bottego explained that he knew that Thompson,
who is married to the mother of Bottego’s wife, had sustained some cuts to his
hand when he and Thompson had performed mechanical work on Bottego’s “old
pickup truck.”  Thompson had not told Bottego
that he had sustained an injury to his hand while working at the refinery.  Approximately one week after they had worked
on the truck, Bottego, who saw that Thompson’s hand was “getting pretty
swollen” and the cuts were starting to “ooze,” told Thompson that he needed to
have a doctor look at his hand and get treatment.  On cross-examination, Bottego stated that it
is possible that Thompson’s infection could have resulted from the combination
of the pre-existing cuts and aggravation at work, caused by something getting
on the cuts.  Bottego also told Brock
“claims people,” “I believe — I’m the
safety guy.  I saw the cuts.  I saw what he did for work.  It’s very possible that’s what
happened.”  

In his testimony at the contested
case hearing, which was read to the jury, Thompson explained that on March 18,
2007, he was at work at the Valero Refinery painting some pipes when it began
to rain and he and his co-workers picked up the paint and supplies to get them
out of the rain.  Thompson noted that
there was usually a gray bucket, labeled “paint thinner,” that the men used to
clean their paintbrushes in and, “every now and then,” they used the paint
thinner to get paint off their hands and nails. 
Thompson later learned that some of his co-workers had “mix[ed] up a
bunch of different materials” in an “identical” gray bucket.  When he saw the gray bucket, he, assuming that
it contained paint thinner, “splashed a little bit” on his fingers to rinse off
the paint.  Thompson then told his supervisor
that he needed to rinse his hands because this “mix” of paint materials was on
his hands as he had put them into the gray bucket.  Thompson then told Valdez and Bottego about
getting the “mix” of paint materials on his hands, and Bottego told Thompson to
“go to the emergency room and have the hand looked after.”  The next day, Thompson went to an emergency
room, where doctors told him that his hand had developed a severe
infection.  Thompson noted that before
the injury at work, while working on Bottego’s truck, he had sustained “small
nicks and scratches . . . little knuckle-busters” on his hands.

A few days later, Thompson returned
to work, when his hand “started getting really red, real irritated.”  While on a lunch break, Bottego, who had
approached Thompson to look at his hand, told Thompson to finish the day, but
to take a few days off to “let this hand try to heal some more.”  Thompson again returned to work, where he was
assigned to perform “sanding work,” which he noted was “real dusty.”  After sanding some pipes, Thompson took off
his gloves and noticed that the cuts in his hand had developed into an
“infection” and “parts of [his] hand were starting to get big holes in
them.”  Around April 3, 2007, Thompson again
went to his supervisors about the infection “getting worse,” and his
supervisors gave him a “medical leave of absence.”

Thompson noted that the records
from his emergency room visit listed March 19, 2007 as the date of his release.  Recognizing the date of his emergency room
release, Thompson believed that March 18, 2007 was the day that he had put his
hands into the “mix” of paint material at the refinery.  However, the medical records listed the date
of March 15, 2007 as the date of the “Accident Occurrence” and the location of his
injury as “Home.”  Thompson explained
that he had told emergency room personnel that the reason for his visit was because
his hand had been exposed to paint chemicals. 
The medical records also contained a notation of “Self-employed.  Home remodeling,” and Thompson noted that he had
previously done home remodeling work, but he stopped when he began working at Brock.
However, he wrote “self-employed” on his emergency room records because Valdez had
threatened to fire him if he did not take “full responsibility to pay [his] own
medical bills.”  

Standard of Review

          A
trial court has broad discretion in submitting its jury charge, and we review a
complaint regarding the submission of jury questions for an abuse of
discretion.  In re D.R., 177 S.W.3d 574, 581
(Tex. App.—Houston [1st Dist.] 2005, pet. denied).  On appeal,
we reverse for error in the jury charge only if, after considering the record
as a whole, including the pleadings, the evidence presented at trial, and the
charge in its entirety, we conclude that the error probably caused the rendition
of an improper verdict or probably prevented the appellant from presenting the
case to an appellate court.  See
Tex. R. App. P. 44.1; Wal–Mart Stores,
Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex. 2003);
Jordan v. Sava, Inc., 222 S.W.3d 840, 847
(Tex. App.—Houston [1st Dist.] 2007, no pet.). 
“Submission of an improper jury question can be harmless error if the jury’s
answers to other questions render the improper question immaterial.”  City of Brownsville
v. Alvarado, 897 S.W.2d 750, 752 (Tex. 1995).
 “A jury question is considered
immaterial when its answer can be found elsewhere in the verdict or when its
answer cannot alter the effect of the verdict.”  Id.
 “Submission of an immaterial issue is
not harmful error unless the submission confused or misled the jury.”  Id.
“When determining whether a particular question could have confused or misled
the jury, we consider its probable effect on the minds of the jury in the light
of the charge as a whole.”  Id.
(citations omitted).

Jury Charge Error

          In
his first issue, Thompson argues that the trial court erred in including a date
of injury in its question to the jury on the issue of whether Ace had proven
that Thompson did not sustain a compensable injury because Ace failed to
specifically appeal the date of injury to the DWC Appeals Panel and did not include
the issue in its original petition.    

The Texas Workers’ Compensation Act
provides a four-tier system for the disposition of claims.  Subsequent
Injury Fund v. Serv. Lloyds Ins. Co., 961 S.W.2d 673, 675 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied); see generally Tex. Lab. Code
Ann. §§ 410.002–410.308
(Vernon 2006 & Supp. 2010).  The
first tier is a benefit review conference conducted by a benefit review
officer.  Subsequent Injury Fund, 961 S.W.2d at 675.  From the benefit review conference, the
parties may proceed, by agreement, to arbitration.  Id.  If the parties do not agree to arbitrate,
the aggrieved party may seek relief at a contested case hearing.  Id.  The hearing officer’s decision is final in
the absence of an appeal.  Tex. Lab. Code Ann. § 410.169 (Vernon 2006).  At the third tier, a party may seek review by
an administrative appeals panel.  Subsequent Injury Fund, 961 S.W.2d at
675.  In the fourth tier, a party
aggrieved by a final decision of the appeals panel has the right to seek
judicial review of the appeals panel decision. 
Tex. Lab. Code Ann. §
410.251 (Vernon 2006); Cont’l Cas. Ins.
Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 398 (Tex. 2000); see also In re Tex. Workers’ Comp. Ins. Fund,
995 S.W.2d 335, 37 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding [mand.
denied]).

A party may not raise an issue in
the trial court that was not raised before a DWC Appeals Panel.  Tex.
Lab. Code Ann. § 410.302(b) (Vernon 2006); Alexander v. Lockheed Martin Corp., 188 S.W.3d 348, 353 (Tex.
App.—Fort Worth 2006, pet. denied).  A
trial is “limited to issues decided by the appeals panel and on which judicial
review is sought,” and the “pleadings must specifically set forth the
determinations of the appeals panel by which the party is aggrieved.”  Tex.
Lab. Code Ann. § 410.302(b).  A
party waives judicial review of any issue not raised before the DWC Appeals
Panel and identified in a timely request for judicial review.  Adams
v. Liberty Mut. Ins. Co., No. 01-09-00178-CV, 2010 WL 143450, at *3 (Tex.
App.—Houston [1st Dist.] Jan 14, 2010 no pet.) (mem. op).  

Here, at the contested case
hearing, the hearing officer determined three issues:

1.     Did [Thompson] sustain a
compensable injury?

 

2.     Does [Thompson] have
disability resulting from the claimed injury, and if so, for what periods?

 

3.     What is the date of injury?

 

Ace then appealed the findings of the hearing
officer to the DWC Appeals Panel. 
However, at both the contested case hearing and the DWC Appeals Panel
hearing, Ace did not dispute the date of Thompson’s injury.  In fact, Ace’s witness testified that
Thompson was at work on March 18, 2007.  We
note that, in its brief to this Court, Ace states, “That specific date of
injury for the alleged workplace claim was never appealed and became
final.”  

          In
its original petition, Ace challenged two issues:

1.     Did [Thompson] sustain a
compensable injury?

 

2.     Did [Thompson] have
resulting [disability] from the claimed injury, and if so, for what periods? 

 

Ace subsequently amended its petition, challenging
whether Thompson had sustained a compensable injury specifically on March 18,
2007.  At trial, Ace presented extensive
evidence that Thompson was not at work on March 18, 2007, and Ace asserted that
this evidence established that Thompson could not have suffered a compensable
injury.  

During the trial court’s charge
conference, a dispute arose over whether to include the date of injury in the question
to the jury on the issue of whether Ace had proven that Thompson did not
sustain a compensable injury.  Ace argued
that March 18, 2007 should be included in the question as the injury date
because that is the date that the hearing officer originally found to be the
date of injury.  The trial court noted
that although Ace had not appealed the date of injury, it had offered evidence
to suggest that March 18, 2007 was not the date on which Thompson had been
injured and, thus, by “default,” Ace was arguing against the date of
injury.  Thompson argued that the date of
injury was not relevant because this is an occupational disease case, and he
asserted that the date of injury would only have been relevant if there had
been a limitations dispute.  The trial
court included in its question March 18, 2007 as the injury date, and Thompson
objected on the ground that the trial court lacked jurisdiction to
re-adjudicate the question of the date of injury because Ace had not appealed
this issue.  Thompson also asserted that including
the date of injury in the charge would materially mislead the jury.  

A party may not raise an issue in
the trial court that was not raised before a DWC appeals panel.  Tex.
Lab. Code Ann. § 410.302(b).  Ace
disputed whether “Thompson sustained a compensable injury and had resulting
disability,” arguing that Thompson’s injury was a non-occupational injury.  Compensable injury “means an injury that
arises out of and in the course and scope of employment.”  Id.
§ 401.011(10).  

Here, at the contested case
hearing, the hearing officer heard testimony from Ace’s witness that Thompson
was at work on March 18, 2007.  Based
upon the evidence presented, the hearing officer determined that the date of
injury was March 18, 2007.  The Texas
Labor Code requires that a request for review by an appeals panel clearly and
concisely rebut or support the decision of the hearing officer on each issue on
which review is sought.  Id. § 401.202(c) (Vernon 2006); Adams, 2010 WL 143450, at *4.  Ace does not dispute that neither it nor
Thompson appealed the issue of the date of his injury.    

In allowing Ace to focus the trial on
the date of injury and including the date in its jury question, when the issue
had not been appealed to the trial court, the trial court in fact allowed Ace
to present an issue to the jury that had not been presented to the DWC Appeals
Panel.  A party may not raise an issue in
a trial court that was not raised before a DWC appeals panel.  Alexander,
188 S.W.3d at 353; see Tex. Mut. Ins. Co.
v. Ochoa, No. 04-09-00401-CV, 2010 WL 2844464, at *4 (Tex. App.—San Antonio
July 21, 2010, no pet.) (mem. op.) (holding that because insurance company did
not appeal administrative finding that injury did not extend to and include
employee’s back problems that issue was waived).  Here, the issue of compensability was
disputed and appealed; however, the specific date of injury was not.  Ace was entitled to present evidence on the
issue of compensability, including evidence as to whether Thompson’s injury had
occurred in the course and scope of his employment.  However, Ace, because it did not previously
dispute and appeal the specific date of Thompson’s injury, was not entitled to
a question essentially asking the jury to resolve the case on the issue of the
specific date of Thompson’s injury.   Because Ace had failed to appeal the issue of
the date of Thompson’s injury, the issue was not properly before the trial
court, and we hold that the trial court erred in including the date in its question
to the jury.  We further hold that this
error harmed Thompson because, even if the jury believed that the evidence
demonstrated that Thompson had sustained a compensable injury within the course
and scope of his employment, the jury was required to find against Thompson if
it was uncertain of the exact date on which the injury occurred.  The trial court’s error thus had the probable
effect of misleading and confusing the jury. 
See Alexander, 897 S.W.2d at
752; see also Tex. R. App. P. 44.1.   

Citing Krueger v. Atascosa County, Ace argues that Thompson failed to
exhaust his administrative remedies on the issue of the specific date of his
injury because even a prevailing claimant must appeal an adverse ruling.  155 S.W.3d 614, 619 (Tex. App.—San Antonio
2004, no pet.).  However, this court has
distinguished Krueger, noting that there
“the dispositive issue was the complaining
party’s failure to appeal the hearing officer’s findings and conclusions to
the appeals panel —not the prevailing party’s failure.”  In re
Metro. Transit Authority, 334 S.W.3d 806, 812 (Tex. App.—Houston [1st
Dist.] 2011, orig. proceeding [mand. denied]). 
Here, Thompson was the prevailing party at both the contested case
hearing and the DWC Appeals Panel hearing, and no adverse ruling was made
against Thompson.  The DWC Appeals Panel
decided the issue of compensability in favor of Thompson, and he was not
aggrieved by the finding that his compensable injury occurred on March 18, 2007
because the specific date of his injury was never at issue at the
administrative level.    

          We
sustain Thompson’s first issue.[3]

Conclusion

          We reverse
the judgment of the trial court and remand for further proceedings.    

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, Massengale.  

 











[1]           See
Tex. Labor Code Ann. § 410.251
(Vernon 2006).  





[2]           The hearing officer, however, found
the date of injury to be March 18, 2007. 






[3]           Having sustained Thompson’s first
issue, we need not address his remaining issues.